UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SAUNDRA HADDIX-HAMILTON,

Plaintiff,

vs.

UNITED NETWORK FOR ORGAN SHARING; and SWEDISH HEALTH SERVICES D/B/A SWEDISH MEDICAL CENTER,

Defendants.

Civil Action No. 2:26-cv-2564

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

Plaintiff Saundra Haddix-Hamilton ("Plaintiff" or "Ms. Haddix-Hamilton") brings this Complaint individually, and on behalf of all persons similarly situated, against the United Network for Organ Sharing ("UNOS") and Swedish Health Services d/b/a Swedish Medical Center ("Swedish" and collectively, the "Defendants") and alleges as follows:

## I. INTRODUCTION

1. Black Americans are more than three times as likely to suffer from kidney failure when compared to White Americans. As a group, and because of ongoing racial inequality, Black Americans are at higher risk for maladies such as high blood pressure, obesity, diabetes, and heart disease, each of which increases the likelihood of suffering kidney disease.

2. Despite being overrepresented when it comes to kidney disease, and overrepresented on the national waitlist for donor kidneys, Black Americans are much less likely than their White counterparts to receive a kidney transplant.

3. Kidney function is measured by an estimated glomerular filtration rate test, commonly referred to as eGFR. A patient's eGFR score is used to determine when the patient is eligible to begin accruing wait time on the national kidney waitlist, with the score needing to fall below 20 mL/min to qualify a patient to begin accruing wait time.

4. When a prevalent modern test to measure eGFR was developed, a few flawed studies indicated Black Americans had higher creatinine extraction rates, and instead of considering whether this difference could be caused by non-racial societal factors, the developers of the eGFR test postulated that Black Americans' scores could be explained because Black Americans have more muscle mass and thus more creatinine in their systems than White Americans.

5. Based on this postulation, the creators of the eGFR test added a race-based modifier to eGFR scores, known as the "race-based coefficient," which artificially inflates the scores of Black Americans by either 16% or 21%, depending on the version of the test. That is, eGFR is calculated irrespective of race, and then only for Black patients, the score is increased by 16% or 21% because of the flawed premise that Black Americans have greater muscle mass and thus naturally have more creatinine in their bodies.



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

6. This, of course, is junk science supported only by racial stereotypes, and not any valid scientific studies. As described in an article titled *Systemic Kidney Transplant Inequities for Black Individuals: Examining the Contribution of Racialized Kidney Function Estimating Equations*, the theory supporting the race-based modification to Black patients' eGFR scores has "not been substantiated by rigorous scientific evidence[.]"

7. Indeed, UNOS admitted as much, posting the following passage on its website, once it finally decided to outlaw use of the race-based coefficient (after more than two decades):

> UNOS — Organ donors — Patients
>
> **What are other issues with the race variable in eGFR?**
>
> EGFR calculations rely on a binary approach to race. When the race variable is used in formulas, eGFR calculators only offer two response options: "Black" or "Not Black."
>
> These options do not include a designation for mixed race or multi-racial individuals, and do not account for the existing genetic diversity within the Black population. The concept of race is a social construct and an unreliable proxy for genetic difference, therefore not a biological marker or clinical measure.

8. This is important because eGFR scores are used to determine when a patient is eligible to begin accruing wait time on the national kidney waitlist, maintained by UNOS, and wait time is a key factor in determining which patient will be awarded a kidney, as kidneys become available. Again, for an eGFR score to qualify a patient with kidney disease to accrue wait time, the eGFR score must fall below 20 mL/min.

9. Application of the race-based coefficient, however, artificially increased Black patients' eGFR scores above that threshold such that Black patients' unmodified eGFR scores must have fallen well below 20 mL/min before they began accruing wait time.

10. Because of the race-based coefficient, many Black patients never began to accrue wait time based on a qualifying eGFR score but were instead delayed until such time as they were forced to begin dialysis. Dialysis is the other possible triggering factor for wait time, but because dialysis is generally indicated when kidney function falls below around 15 mL/min, an eGFR score of 20



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

mL/min is the first opportunity to qualify. This is why it is called "preemptive listing."

11. UNOS and its affiliated transplant hospitals, including Swedish, enforced this race-based admissions requirement for the kidney waitlist jointly. That is, UNOS policy required that for Black patients, "Black scores" be entered into its UNet software, in the section that determines eligibility to accrue wait time. Similarly, transplant hospitals, including Swedish, required a race-adjusted score of 20 mL/min to qualify for admission to their transplant program, or to register patients on the kidney waitlist.

12. These race-based admissions requirements caused nephrologists to delay referral of their Black kidney disease patients until such time as their race-adjusted scores reached 20 mL/min. Had nephrologists referred Black patients earlier, Swedish's policies would have rendered them ineligible for waitlisting at its transplant hospital, and even if the patients were registered in UNet, because UNOS required race-adjusted scores be entered in UNet, the patients would not have begun to accrue wait time.

13. Ms. Haddix-Hamilton is one of Swedish's Black kidney disease patients that was harmed by UNOS's and Swedish's use of the race-based coefficient.

14. By May 17, 2012, Ms. Haddix-Hamilton's kidney disease progressed to the point where, absent the race-based coefficient, she would have qualified to be added to the national kidney waitlist and accrue wait time. But in reality, because Ms. Haddix-Hamilton is Black, her kidney function score was adjusted, and Swedish did not refer her to its transplant program or register her on the waitlist.

15. It was more than six years—July 25, 2018—before Swedish registered Ms. Haddix-Hamilton on the kidney waitlist. During that time, Ms. Haddix-Hamilton was deprived of the ability to be considered for donor kidneys.

16. Today, with more than 16 years of qualifying wait time, Ms. Haddix-Hamilton is still waiting for a donor kidney. She has been on dialysis for more than six years. Because Ms. Haddix-Hamilton has waited so long, and because kidney disease and dialysis is taxing on the body, Ms. Haddix-Hamilton's health deteriorated to the point she is marked as inactive on the kidney waitlist,



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

no longer healthy enough to undergo a transplant surgery.

17. Most recently, Ms. Haddix-Hamilton suffered from a stroke and underwent heart surgery. She has been forced to move from Washington to Michigan to live with family that can assist with her medical care. Ms. Haddix-Hamilton is quite literally fighting for her life because of UNOS's and Swedish's intentional, race-based discrimination.

## II. PARTIES

18. Ms. Haddix-Hamilton is an individual residing in Wyoming, Michigan. Until April 2026, however, Ms. Haddix-Hamilton resided in Everett, Washington.

19. Defendant UNOS is a Virginia nonprofit corporation with its principal place of business in Richmond, Virginia.

20. Defendant Swedish is a non-profit corporation organized and existing under the laws of Washington with its principal place of business in Seattle, Washington.

21. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 because Ms. Haddix-Hamilton asserts a federal cause of action alleging racial discrimination. This Court further has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

22. Venue in this district is proper pursuant to 28 U.S.C. § 1391 because Plaintiff resided in this District and has been affected by Defendants' unlawful policies and procedures within the District, Swedish's principal place of business is within this District, and Swedish's alleged actions have occurred within the District. Thus, a substantial part of the events or omissions that gave rise to the claims asserted herein occurred within this District.

23. This Court has personal jurisdiction over UNOS because UNOS conducts operations within Washington by virtue of its management of the kidney donor list for all patients residing within the State, including Plaintiff. UNOS makes decisions as to which patients residing in Washington will be offered donor kidneys.

24. This Court has personal jurisdiction over Swedish because Swedish maintains its principal place of business within the State, and harmed Plaintiff by virtue of the unlawful conduct



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

alleged herein within this State.

## III. GENERAL ALLEGATIONS

### A. The national kidney transplant waitlist is controlled by the Defendants, and wait time is the primary factor considered in awarding donor kidneys.

25. In 1984, Congress passed the National Organ Transplant Act ("NOTA"), creating the Organ Procurement and Transplantation Network ("OPTN"), which was tasked with maintaining a national registry for organ matching. Per the Act, this registry was to be operated by a private, non-profit organization under federal contract.[1]

26. Since that time, UNOS has acted as that private, non-profit organization which operates the OPTN. As its website declares, UNOS "[m]anag[es] the national transplant waiting list, matching donors to recipients 24 hours a day, 365 days a year." UNOS establishes and implements policy concerning how donor kidneys will be awarded to patients with kidney disease.

27. UNOS claims to "develop policies that make the best use of the limited supply of organs and give all patients a fair chance at receiving the organ they need, regardless of age, sex, ethnicity, religion, lifestyle, or financial/social status."

28. On its website, it even features pictures such as the one below, in which it touts itself as promoting "fairness and equity."

[1] Patients can also seek a kidney from a private donor, such as a family member or friend, at the same time as they wait for a kidney on the national waitlist.



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375




29. UNOS is contractually obligated to manage the national kidney waitlist but does not allow kidney disease patients to apply for inclusion on the kidney transplant waitlist directly through UNOS.

30. To be placed on the national kidney transplant waitlist, a patient must first visit one of 200+ transplant hospitals and receive a referral from his physician. In this way, the transplant hospitals, like Swedish, serve as gatekeepers to patients seeking to be placed on the national kidney waitlist.

31. UNOS must approve these transplant hospitals before they are eligible to refer patients to the kidney transplant waitlist. Hospitals like Swedish must agree to be bound by UNOS's published policies and procedures to act as a transplant hospital. They then act as UNOS's agent in managing the national transplant waitlist.

32. The national kidney waitlist is maintained using UNOS software, known as UNet. When a new patient is added to the waitlist, the referring hospital enters the patient's name and relevant medical information, including eGFR scores, into the UNet software, which tracks patient medical information and wait time.

33. Each time a donor kidney becomes available, UNet's algorithm considers the information maintained in UNet and generates a list of potential medical matches, known as a match run, which ranks the medical matches on the national kidney waiting list by allocation score. These





KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

kidneys are then offered to patients through the transplant hospitals, in accordance with the UNet-generated rankings.

34. In the UNet algorithm, qualifying wait time is worth 1/365 points per day, or one point per year. These wait time points are a significant factor in determining candidates' ranking in UNet's match runs, and ultimately which candidate will be awarded any particular kidney.

35. Indeed, because all other factors for which candidates are assigned points are race-neutral, wait time acts as a sort of tie breaker between similarly situated Black and non-Black candidates. That is, the race-based coefficient caused Black candidates to accrue less wait time than similarly situated non-Black candidates. Non-Black candidates therefore appeared higher in match runs, and were awarded kidneys first.

36. Importantly, referral to the waitlist does not automatically start the clock on qualifying wait time. Generally, to accrue qualifying wait time, either a patient's eGFR score must fall below 20 mL/min or the patient must begin dialysis.

**B. The Defendants used the race-based coefficient and enforced a racially discriminatory admissions policy for the kidney waitlist.**

37. UNOS is responsible for enacting policy that determines which patients receive which donor kidneys. In this regard, UNOS offers as one of its strategic goals to "[p]rovide equity in access to transplants[.]" UNOS has fallen far short of its stated goal.

38. For decades, despite claiming to "give all patients a fair chance at receiving the organ they need," UNOS applied a race-based coefficient to artificially inflate eGFR scores for Black Americans, overstating their kidney function by 16% or 21%, because of the racial stereotype that Black Americans have greater muscle mass and thus naturally have more creatinine in their bodily systems.

39. As noted above, patients do not begin accruing wait time on the national kidney waitlist until their eGFR score reaches 20 mL/min. But for Black patients, even when their unadjusted eGFR score fell below 20 mL/min, the race-based coefficient artificially inflated their eGFR scores above 20 mL/min, preventing them from qualifying to accrue wait time. Thus, Black patients' eGFR



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

scores had to fall well below 20 mL/min before they began to accrue wait time.

40. This practice led to many Black kidney disease patients never qualifying for wait time by eGFR score because their addition to the waitlist was delayed until the patients started dialysis (which is recommended when kidney function falls below 15 mL/min).

41. In related litigation, UNOS has argued there was no express policy requiring use of the race-based coefficient. That is not true. UNOS conducts site visits at its transplant hospitals, and during those site visits, UNOS audited records and required that for Black patients, transplant hospitals enter the "Black value" into UNet. If transplant hospitals did not match eGFR scores with race they risked citation and enforcement action.

42. UNOS, moreover, knowingly used modified eGFR scores and manipulated wait times when ranking patients for kidney transplants. UNOS is and has at all times been aware that its UNet software includes an algorithm that uses wait time as the primary factor in ranking patients for donor kidneys, and that its UNet software includes wait times for Black patients that have been manipulated by application of the race-based coefficient. To be clear, this modification was made to Black patients' eGFR scores entirely because of their race and was not applied to other racial groups.

43. Despite being entrusted to ensure equity in the kidney transplant space and having actual knowledge of the race-based coefficient, UNOS did nothing to outlaw its use for more than two decades. In addition to the express requirements and use of the race-based coefficient explained above, in this way, UNOS encouraged use of the race-based coefficient.

44. As to Swedish, Swedish used the race-based coefficient when assessing its Black patients' eGFR scores until at least 2022. Swedish also used race-adjusted scores when determining whether Black patients met the admissions requirement for its kidney transplant program, which required a race-adjusted score of 20 mL/min for Black patients.

45. Despite UNOS banning the practice, Swedish never announced any policy change, nor is Ms. Haddix-Hamilton aware of any evidence supporting that Swedish will no longer consider race-adjusted scores, if provided. On this basis, upon information and belief, Ms. Haddix-Hamilton alleges that Swedish will still consider race-adjusted scores for its Black patients.



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

46. There has never been any serious scientific research to support use of the race-based coefficient to artificially increase Black patients' eGFR scores. Instead, the race-based coefficient is based on eugenics-style racism and stereotypes that assume Black Americans are more physically fit than White Americans and other racial groups.

47. This, of course, is junk science supported only by racial stereotypes, and not any valid scientific studies. As described in an article titled *Systemic Kidney Transplant Inequities for Black Individuals: Examining the Contribution of Racialized Kidney Function Estimating Equations*, the theory supporting the race-based modification to Black patients' eGFR scores has "not been substantiated by rigorous scientific evidence[.]"

48. Years before UNOS took any action to review its policy allowing for use of the race-based coefficient, the practice was criticized by doctors for its racially discriminatory nature. For example, in November of 2011, Dr. Toni Martin published an article in the *American Journal of Kidney Diseases* that questioned the practice, explaining that when she attempts to explain the policy to Black patients, she "get[s] a snort of disbelief[,]" and noting the history of purported genetic differences being used against Black Americans against a backdrop of "separate and unequal."[2]

49. Use of the race-based coefficient seriously diminishes Black patients' chances of receiving a donor kidney. For Black patients that overcome the odds and do receive a kidney from the national waitlist, their wait time is still significantly increased. Indeed, because of this eGFR manipulation, many Black patients never qualified to accrue wait time because of their eGFR score, and only began to accrue wait time when they began dialysis.

50. All other factors being equal, the above-described practices have resulted in non-Black patients receiving numerous kidneys that would otherwise have been given to Black applicants had their wait time been calculated without consideration of race.

51. The failure to receive donor kidneys has caused significant harm to Black Americans. The unfortunate reality is that many Black Americans, who could have survived if fairly considered

[2] To be clear, Mr. Maddox was unaware of this article, and Mr. Maddox was further unaware that his race affected his position on the waitlist until August of 2023.



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

for a donor kidney, have already passed away.

52. Other Black Americans have suffered worsened kidney disease and/or been forced into dialysis treatment because of the lengthened wait time for a donor kidney, which has also caused myriad resulting health problems.

**C. Even after UNOS admitted that the race-based coefficient discriminates against Black Americans, Defendants refused to timely address the problem.**

53. In June of 2020, UNOS acknowledged the racial inequity plaguing the transplant system and the need for reform. In an article found at https://unos.org/news/racial-equity-in-transplantation/, UNOS professed a "commitment" to "saving and improving lives through transplantation, regardless of background, including race and ethnicity." But the race-based coefficient would remain in effect for years to come.

54. In June of 2022, UNOS admitted the racially discriminatory nature of the race-based coefficient for Black Americans, approving "a measure to require transplant hospitals to use a race-neutral calculation when estimating a patient's level of kidney function." In its press release, UNOS explained that:

> For a number of years, some eGFR calculations have included a modifier for patients identified as Black. This practice has led to a systemic underestimation of kidney disease severity for many Black patients. Specifically in organ transplantation, it may have negatively affected the timing of transplant listing or the date at which candidates qualify to begin waiting time for a transplant.[3]

55. UNOS posted the following passage on its website:

[3] This press release is publicly available at https://unos.org/news/optn-board-approves-elimination-of-race-based-calculation-for-transplant-candidate-listing/.





KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

UNOS Organ donors Patients

**What are other issues with the race variable in eGFR?**

EGFR calculations rely on a binary approach to race. When the race variable is used in formulas, eGFR calculators only offer two response options: "Black" or "Not Black."

These options do not include a designation for mixed race or multi-racial individuals, and do not account for the existing genetic diversity within the Black population. The concept of race is a social construct and an unreliable proxy for genetic difference, therefore not a biological marker or clinical measure.

56. UNOS's policy officially changed on July 27, 2022, with UNOS's policy prior to that time expressly allowing for use of the race-based coefficient to artificially increase Black patients' eGFR scores.

57. Nonetheless, UNOS continued to use the race-based coefficient as a default. For more than six months, UNOS took no affirmative steps to adjust wait times and correct for previous use of the race-based coefficient.

58. On January 5, 2023, UNOS announced a new policy that would require donor hospitals to provide two notifications to patients on the national kidney waitlist, one notifying patients that Black Americans will be considered for wait time adjustments where the race-based coefficient delayed their accrual of wait time, and a second notification confirming this process was completed and informing patients of their status. UNOS also directed donor hospitals to investigate which patients are eligible for a wait time adjustment, and to request said adjustments with UNOS within a year, i.e., by January of 2024.

59. While this adjustment in policy rightfully acknowledged the racially discriminatory nature of the race-based coefficient, it lacked the requisite urgency, and for many of the 27,500 Black Americans then on the national kidney waitlist, like Ms. Haddix-Hamilton, the policy change was too little too late. During the 18 months of lag time in adjusting wait times, Black Americans continued to suffer a race-based disadvantage in their candidacy for a donor kidney, with UNet continuing to use the old, improperly calculated wait times when awarding kidneys. As a result of her additional

wait time for a kidney transplant, Ms. Haddix-Hamilton and the putative class members suffered significant harms.

60. Had the race-based coefficient not been used to assess Ms. Haddix-Hamilton's eGFR score, she would have qualified to begin accruing time on the waitlist on May 17, 2012, her race-neutral eGFR measuring at 20 mL/min or below.

61. However, solely because Ms. Haddix-Hamilton is Black, the race-based coefficient was applied to Ms. Haddix-Hamilton's eGFR score to artificially increase her score above 20 mL/min, and Ms. Haddix-Hamilton was not added to the kidney waitlist.

62. In reality, Ms. Haddix-Hamilton was not added by Swedish to the kidney waitlist until July 25, 2018. During that time, Ms. Haddix-Hamilton was deprived the ability to be considered for donor kidneys.

63. Ms. Haddix-Hamilton began dialysis in approximately 2020. Had she been added to the waitlist when she qualified in 2012, absent use of the race-based coefficient, she would have accrued seven to eight years of wait time before dialysis and could have received a kidney transplant before ever starting dialysis.

64. Instead, Ms. Haddix-Hamilton has undergone more than six years of dialysis, and is still waiting for a kidney. Because Ms. Haddix-Hamilton has waited so long, however, and because kidney disease and dialysis is taxing on the body, Ms. Haddix-Hamilton's health deteriorated to the point she is marked as inactive on the kidney waitlist, no longer healthy enough to undergo a transplant surgery.

65. Most recently, Ms. Haddix-Hamilton suffered from a stroke and underwent heart surgery. Ms. Haddix-Hamilton is quite literally fighting for her life in an attempt to recover to the point she can undergo a transplant surgery because of UNOS's and Swedish's intentional, race-based discrimination.

66. Ms. Haddix-Hamilton received a wait time adjustment on November 15, 2023, adjusting her waiting time starting date from July 25, 2018, to May 17, 2012. Dr. Matthew Cooper, ex-president of UNOS, testified that such a wait time adjustment reflects the "best objective

measurement" of the harm caused by the race-based coefficient.

67. Prior to being provided a wait time adjustment, none of Ms. Haddix-Hamilton's medical providers ever disclosed to her their use of the race-based coefficient. Indeed, Ms. Haddix-Hamilton had no knowledge the race-based coefficient existed, that it was used in connection with measuring her kidney function, or that the race-based coefficient could impact her eligibility to accrue wait time.

## IV. CLASS ACTION ALLEGATIONS

68. Ms. Haddix-Hamilton brings this action on behalf of herself and the below-defined putative class members who are similarly situated under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure. To be clear, Ms. Haddix-Hamilton brings individual and putative class claims against UNOS and Swedish.

69. The Swedish Class seeks damages and is defined as follows:

Black kidney disease patients registered on the national kidney transplant waitlist at Swedish, from 2000 to the present, that received or would have qualified for a wait time adjustment because a lab test shows that with a race-inclusive calculation, the candidate's eGFR was over 20 mL/min, but with a race-neutral calculation it would have been 20 mL/min or less. This class excludes those patients pursuing race-based-coefficient-related claims against Swedish and/or UNOS on an individual basis.

70. Swedish has registered more than 500 Black patients on the kidney waitlist since 2000. Upon information and belief, in excess of 200 of these Black patients received or would have qualified for a wait time adjustment because a lab test shows that with a race-inclusive calculation, the candidate's eGFR was over 20 mL/min, but with a race-neutral calculation it would have been 20 mL/min or less.

71. The identities of the members of the proposed classes are known or readily ascertainable by UNOS and Swedish, and the number of persons who fall within the definition of this class is so numerous and geographically dispersed as to make joinder of all members of the proposed classes in their individual capacity impracticable, inefficient, and unmanageable so as to effectively



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

deny each putative member of these classes his, her, or their right to obtain relief based on the claims and allegations made in this Complaint.

72. There are common questions of law and fact as to the Swedish Class relating to and/or dispositive of the allegations of unlawful conduct made in the Complaint, and relating to and/or dispositive of the common pattern of alleged injury and harm caused by the alleged discriminatory conduct and sustained by the putative members of the classes, including, but not limited to:

- Whether UNOS discriminated against members of the Swedish Class on account of their race by requiring use of the race-based coefficient;
- Whether UNOS discriminated against members of the Swedish Class on account of their race by its knowing use of manipulated wait time data in the UNet algorithm;
- Whether UNOS's UNet algorithm was racially biased and led to delay for Black candidates seeking donor kidneys;
- Whether the disparate impact of UNOS's policy allowing for use of the race-based coefficient and the UNet algorithm was known to UNOS during the relevant time, leading to the uniform disparate treatment of members of the Swedish Class;
- Whether Swedish discriminated against members of the Swedish Class by using the race-based coefficient when measuring and assessing their kidney function scores;
- Whether Swedish discriminated against members of the Swedish Class by requiring a race-adjusted score of 20 mL/min for entry to the transplant program and kidney waitlist registration;
- Whether Swedish's failure to provide accurate wait time data for inclusion in UNet was racially biased and led to delay for Black candidates seeking donor kidneys;
- Whether the disparate impact of Swedish's failure to provide accurate wait time dates for inclusion in UNet was known to Swedish during the relevant time period, leading to the uniform disparate treatment of the Swedish Class;
- Whether UNOS's and/or Swedish's use of the race-based coefficient was extreme and outrageous; and



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

- The length of the delay caused by use of the race-based coefficient, damages resulting therefrom, and the amount of separate instances of discrimination.

73. The interests of Plaintiff and the Swedish Class are aligned. Plaintiff seeks to establish that UNOS and Swedish are liable for damages caused to Black patients by application the race-based coefficient. Should Plaintiff prevail in establishing the same, each of the other members of the class would then be entitled to recover damages in compensation for their injuries.

74. The claims of Plaintiff are typical of the claims of the members of the Swedish Class. Plaintiff is a Black transplant hospital patient whose referral to the UNOS waitlist and accrual of wait time was delayed because of the use of the race-based coefficient.

75. Plaintiff's claims are typical of the other members of the classes because all class members were injured as a result of substantially similar conduct by UNOS and Swedish.

76. Plaintiff is an adequate class representative because her interests do not conflict with the interests of the other members of the classes. Plaintiff retained counsel competent and experienced in complex class action litigation, who is an expert in this subject matter, having been named lead counsel for a certified class making similar claims in the Central District of California. Plaintiff intends to prosecute this action vigorously. The classes' interests will be fairly and adequately protected by Plaintiff and her counsel.

77. The prosecution of separate actions by individual members of the classes within Washington would create a risk of inconsistent or varying adjudications.

78. The questions of law and fact common to the members of the classes predominate over any questions of law or fact affecting only individual members of the Swedish Class. The primary class claims to be proven in this case relate to whether UNOS and Swedish engaged in actionable discriminatory behavior by virtue of their use of the race-based coefficient and manipulated wait times in the formula to determine which patient receives a donor kidney.

79. The types of damages suffered by class members, such as increased medical costs, are uniform and can be calculated on a class-wide basis, and to the extent damages like lost wages or emotional distress require individual computation, such computations are straightforward such that



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

class resolution of liability predominates.

80. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Prosecution as a class action will eliminate the need for repetitious litigation—if it were even feasible for each member of the class to proceed individually.

81. To the extent UNOS or Swedish argue members of the Swedish Class require individual analysis of damages, it remains much more practical to determine the class wide liability issues one time, as opposed to in hundreds of separate proceedings.

82. Plaintiff is aware of similar cases filed against UNOS: *Randall v. UNOS*, No. 2:23-cv-0257 (C.D. Cal.); *Rowe v. UNOS*, No. 2:24-cv-05022 (C.D. Cal.); *Holt v. UNOS*, No. 1:24-cv-01599 (N.D. Ga.); *Welch v. UNOS*, No. 3:24-cv-00422; *Hallmon v. UNOS*, No. 2:24-cv-04100 (D.S.C.); *Maddox v. UNOS*, No. 2:24-cv-00811 (W.D. Wash.); *Fields v. UNOS*, No. 6:24-cv-01434 (M.D. Fla.); *Santos v. UNOS*, No. 1:24-cv-11692-DJC (D. Mass.); *Thompson v. UNOS*, No. 1:24-cv-11693-DJC (D. Mass.); *Thompson v. UMass*, No. 3:25-cv-30216-MGM (D. Mass.). The *Welch* matter is no longer active.

83. Washington is a proper and desirable forum for the claims against UNOS and Swedish to proceed. UNOS maintains the national kidney waitlist, but thousands of Black members of that waitlist reside in Washington. Moreover, Plaintiff and members of the Swedish Class sought medical treatment and, in many cases, resided in Washington.

84. The classes are readily definable by review of medical records that should exist in the files of UNOS and Swedish. Moreover, UNOS and Swedish should have records of the email addresses, phone numbers, and addresses of members of the classes such that providing notice to the class will be practicable. Thus, there does not exist any significant likely difficulties in managing the claims as a class action.



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

## V. CAUSES OF ACTION

### COUNT ONE
### (Violation of Title VI of the Civil Rights Act of 1964)

85. Ms. Haddix-Hamilton re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth above.

86. This cause of action is brought by Ms. Haddix-Hamilton and the Swedish Class against all Defendants.

87. UNOS and Swedish receive significant financial assistance from the Federal government.

88. In this regard, approximately 10% of UNOS's budget is provided by the Federal government, in accordance with the National Organ Transplant Act's authorization of $7,000,000/year to fund a private, non-profit entity such as UNOS. These contracts were intended by the Federal government to act as a subsidy to UNOS, not as compensation for any goods or services provided by UNOS to the Federal government, for which there are none. Moreover, UNOS acknowledges in its financial documents that this Federal government assistance is a "grant."

89. Swedish receives significant financial assistance from the Federal government and its programs, funding both patient care and other related operations.

90. Defendants have engaged in racial discrimination. As alleged in detail above, Defendants required and encouraged use of the race-based coefficient to artificially inflate Black patients' eGFR scores, including that of Ms. Haddix-Hamilton, with UNOS adopting, encouraging, and implementing the race-based coefficient, and Swedish applying the race-based coefficient directly and using race-adjusted numbers when determining eligibility for its transplant program and waitlist registration. UNOS and Swedish thereby enforced a race-based admissions policy for the kidney waitlist. This delayed Ms. Haddix-Hamilton's accrual of wait time and prejudiced her chances of receiving a donor kidney.

91. Defendants further knowingly input and used race-modified wait times for Black patients, including Ms. Haddix-Hamilton, in UNOS's UNet software, causing them to be ranked



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

lower for specific donor kidneys than non-Black patients. Even after UNOS admitted the practice was racially discriminatory, Defendants failed to take prompt action to ensure Black patients' (including Ms. Haddix-Hamilton's) wait times were recalculated. And Swedish still allows for consideration of race-adjusted eGFR scores when evaluating whether Black patients qualify for its transplant program.

92. The damages resulting from the above-described racial discrimination include but are not limited to depriving and/or delaying Ms. Haddix-Hamilton's award of a donor kidney. This discrimination also caused Ms. Haddix-Hamilton to incur economic injuries, including but not limited to, continued medical costs such as dialysis costs and lost wages.

93. The above-described racial discrimination caused additional damages including but not limited to pain and suffering and severe emotional distress.

**COUNT TWO**
**(Violation of Washington Law Against Discrimination,**
**Wash. Rev. Code § 49.60.010 et seq.)**

94. Ms. Haddix-Hamilton re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth above.

95. This cause of action is brought by Ms. Haddix-Hamilton and the Swedish Class against all Defendants.

96. RCW 49.60.030(1) provides, "[t]he right to be free from discrimination because of race, creed, color, national origin, citizenship or immigration status, sex, honorably discharged veteran or military status, sexual orientation, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability is recognized as and declared to be a civil right."

97. This right includes, but is not limited to, "[t]he right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement." RCW 49.60.030(1)(b).

98. Being placed on the kidney transplant waitlist is also a privilege of a place of public accommodation. Receiving a kidney transplant is also a privilege of a place of public accommodation.



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

99. The privileges of being placed on the kidney transplant waitlist and of receiving a kidney from UNOS's national transplant waitlist are provided solely at kidney transplant hospitals. Indeed, as alleged above, to even get on the UNOS transplant waitlist requires visiting a transplant hospital such as Defendant Swedish.

100. Defendant UNOS maintains the national waitlist and provides the donor kidney, which a patient receives at a partner transplant hospital, here, Defendant Swedish.

101. Swedish's hospitals, where the privileges of being placed on the waitlist and of receiving a kidney transplant takes place, are places of public accommodation. There is no other place of public accommodation where this can take place.

102. Both UNOS and Swedish have engaged in discriminatory conduct interfering with Plaintiff's right to the full enjoyment of a privilege of a place of public accommodation.

103. Defendants have engaged in racial discrimination. As alleged in detail above, Defendants required and encouraged use of the race-based coefficient to artificially inflate Black patients including Ms. Haddix-Hamilton's eGFR scores, with UNOS requiring, encouraging, and implementing the race-based coefficient, and Swedish applying the race-based coefficient directly and considering race-adjusted numbers to determine eligibility, thus delaying Ms. Haddix-Hamilton's accrual of wait time, and prejudicing her chances of receiving a donor kidney.

104. Defendants further knowingly input and used these modified wait times for Black patients, including Ms. Haddix-Hamilton, in UNOS's UNet software, causing them to be ranked lower for specific donor kidneys than non-Black patients. Even after UNOS admitted the practice was racially discriminatory, Defendants failed to take prompt action to ensure Black patients' (including Ms. Haddix-Hamilton's) wait times were recalculated.

105. The damages resulting from the above-described racial discrimination include but are not limited to depriving and/or delaying Ms. Haddix-Hamilton's award of a donor kidney. This discrimination also caused Ms. Haddix-Hamilton to incur economic injuries, including but not limited to, continued medical costs such as dialysis costs, and also lost wages.

106. The above-described racial discrimination caused additional damages including but



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

not limited to pain and suffering and severe emotional distress.

**COUNT THREE**
**(Breach of Fiduciary Duty)**

107. Ms. Haddix-Hamilton re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth above.

This cause of action is brought by Ms. Haddix-Hamilton and the Swedish Class against Swedish.

108. As the transplant hospital for Ms. Haddix-Hamilton, Swedish owed Ms. Haddix-Hamilton a fiduciary duty. Swedish acted as an intermediary between Ms. Haddix-Hamilton and the market for donor kidneys, similar to how a stockbroker operates for his clients' benefit in the financial markets. Ms. Haddix-Hamilton, having no ability to communicate with UNOS or advocate for herself, trusted and relied on Swedish to act in her best interests in obtaining for her a life-saving kidney.

109. Swedish breached its fiduciary duty to Ms. Haddix-Hamilton by engaging in racial discrimination against her. Swedish knowingly relied on and submitted eGFR scores tainted by use of the race-based coefficient to UNOS for inclusion in its UNet algorithm, prejudicing Ms. Haddix-Hamilton's chances of receiving a donor kidney. Even after UNOS changed course and prohibited the use of the race-based coefficient, Swedish failed for more than a year to recalculate Ms. Haddix-Hamilton's wait time.

110. Swedish also failed to inform Ms. Haddix-Hamilton of its practice of using the race-based coefficient such that she could demand race neutral treatment either at Swedish or another hospital.

111. The damages resulting from the above-described breaches of fiduciary duty include but are not limited to depriving and/or delaying her award of a donor kidney. This discrimination also caused Ms. Haddix-Hamilton to incur economic injuries, including but not limited to, continued medical costs such as dialysis and lost wages.

112. The above-described racial discrimination caused additional damages including but



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

not limited to pain and suffering and severe emotional distress.

**COUNT FOUR**
**(Outrage)**

113. Ms. Haddix-Hamilton re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth above.

114. This cause of action is brought by Ms. Haddix-Hamilton and the Swedish Class against all Defendants.

115. Defendants' conduct, as described in this Complaint, can only be described as so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

116. Defendants' extreme and outrageous conduct, intentionally and/or recklessly caused Ms. Haddix-Hamilton the harms and damages described herein, including severe emotional distress.

117. The above-described outrage caused additional damages including, but not limited to, pain and suffering and severe emotional distress.

## VI. PRAYER FOR RELIEF

WHEREFORE, Ms. Haddix-Hamilton prays for relief against Defendants as follows:

1. For injunctive relief requiring that Swedish cease from using the race-based coefficient or race-adjusted eGFR scores for its Black patients for any purpose;

2. For damages in compensation for the economic, medical, personal injuries, and pain and suffering, and emotional distress sustained by Ms. Haddix-Hamilton and members of the Swedish Class in an amount to be determined by evidence;

3. For pre-judgment interest on all damages awarded by this Court;

4. For reasonable attorneys' fees and costs of suit incurred herein; and

5. For such other and further relief as the Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

Ms. Haddix-Hamilton hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.



KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

WATSTEIN TEREPKA, LLP
515 South Flower Street, 19th Floor
Los Angeles, California 90071
(213) 753-7375

DATED: July 21, 2026.

Respectfully submitted,

**WATSTEIN TEREPKA, LLP**

By: *s/Matthew Venezia*
By: *s/George Laiolo*
By: *s/Daniel Contreras*
Matthew Venezia, *pro hac vice forthcoming*
California Bar No. 313812
George Laiolo, *pro hac vice forthcoming*
California Bar No. 329850
Daniel Contreras, *pro hac vice forthcoming*
California Bar No. 329632
515 South Flower Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 753-7375
Email: mvenezia@wtlaw.com
Email: glaiolo@wtlaw.com
Email: dcontreras@wtlaw.com

**KELLER ROHRBACK L.L.P.**

By: *s/David J. Ko*
By: *s/Daniel P. Mensher*
David J. Ko, WSBA #38299
Daniel P. Mensher, WSBA #47719
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
Email: dko@kellerrohrback.com
Email: dmensher@kellerrohrback.com

By: *s/Norjmoo Battulga*
Norjmoo Battulga, *pro hac vice forthcoming*
601 SW 2nd Avenue, Suite 1900
Portland, OR 97204
Telephone: (971) 253-4600
Email: nbattulga@kellerrohrback.com

*Attorneys for Plaintiff*
*Saundra Haddix-Hamilton*